**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Bernadette B., | No. CV-24-00473-PHX-SHD |
| Plaintiff, | **ORDER** |
| v. | |
| Commissioner of Social Security Administration, | |
| Defendant. | |

Claimant Bernadette B. ("Claimant")[1] seeks review of the Social Security Administration Commissioner's ("SSA") final decision denying her disability insurance benefits. SSA concedes error in the ALJ's consideration of the supportability factor regarding previous administrative medical findings and medical opinions and requests the Court remand for further administrative proceedings. For the following reasons, the Administrative Law Judge's ("ALJ") decision is **vacated and remanded** for further administrative proceedings.

## I.    BACKGROUND

Claimant filed applications for disability insurance benefits on January 5, 2021 (Title XVI) and February 10, 2022 (Title II), respectively. (Administrative Record ("AR") 41.) In the ALJ's decision, the ALJ determined Claimant had the severe impairments of bipolar disorder, generalized anxiety disorder, depression, and attention deficit hyperactivity disorder. (AR 44.) The ALJ evaluated the medical evidence and testimony

---

[1]    As a matter of practice, the Court refers to Claimant as such and, at most, by her first name and last initial to protect her privacy.

and ultimately concluded that Claimant was not disabled.  (AR 47–56.)  In doing so, the ALJ determined that Claimant had the Residual Functional Capacity ("RFC") to perform a full range of work at all exertional levels but with the non-exertional limitations that Claimant could "understand, remember, and carry out simple instructions and perform simple, routine, and repetitive tasks" and could "have occasional superficial interaction with the public and co-workers" but could not "have contact with crowds."  (AR 47.)  Based on the RFC formulation and the testimony of the Vocational Expert ("VE") at the hearing, the ALJ found that Claimant could perform jobs such as inspector, hand packager; folder; and food machine tender, such that she was not under a disability as defined in the Social Security Act (the "Act").  (AR 55–56.)

The ALJ thus denied Claimant's claim (AR 57), and the Appeals Council denied her request for review (AR 1).  Claimant then appealed to this Court.

## II.    LEGAL STANDARD

The Court reviews only those issues raised by the party challenging the decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001).  The Court may set aside SSA's disability determination only if it is not supported by substantial evidence or is based on legal error.  *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007).  "Substantial evidence is more than a mere scintilla but less than a preponderance" of evidence and is such that "a reasonable mind might accept as adequate to support a conclusion."  *Id.* (quoting *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005)).  To determine whether substantial evidence supports a decision, the Court must consider the record as a whole.  *Id.*  But if "the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld."  *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

To determine whether a claimant is disabled for purposes of the Act, the ALJ follows a five-step process.  20 C.F.R. § 404.1520(a).  The claimant bears the burden of proof on the first four steps, but the burden shifts to SSA at step five.  *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).  At the first step, the ALJ determines whether the claimant

is presently engaged in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). If so, the claimant is not disabled, and the inquiry ends. *Id.* At step two, the ALJ determines whether the claimant has a "severe medically determinable physical or mental impairment." *Id.* § 404.1520(a)(4)(ii). If not, the claimant is not disabled, and the inquiry ends. *Id.* At step three, the ALJ considers whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404. *See id.* § 404.1520(a)(4)(iii). If so, the claimant is automatically found to be disabled. *Id.* If not, the ALJ proceeds to step four. *Id.* At step four, the ALJ assesses the claimant's RFC—the most the claimant can do with their impairments—and determines whether the claimant is still capable of performing past relevant work. *Id.* § 404.1520(a)(4)(iv). If so, the claimant is not disabled, and the inquiry ends. *Id.* If not, the ALJ proceeds to the fifth and final step, where he or she determines whether the claimant can perform any other work that exists in "significant numbers in the national economy" based on the claimant's RFC, age, education, and work experience. *Id.* § 404.1520(a)(4)(v); *Tackett*, 180 F.3d at 1099. If so, the claimant is not disabled. *Id.*

## III. DISCUSSION

Claimant raises two arguments in this appeal: (1) whether the ALJ erred in rejecting the opinion of Dr. Brent Geary, an examining psychologist; and (2) whether the ALJ erred by discounting Claimant's symptom testimony. (Doc. 13 at 1–2.) The Court considers each argument in turn.

### A. Medical Opinion Evidence

Under current SSA regulations, treating or examining physician opinions are no longer entitled to deference over other medical sources. *Woods v. Kijakazi*, 32 F.4th 785, 791–92 (9th Cir. 2022). Instead, an ALJ will evaluate every medical source based on several factors, the "most important" of which are "supportability" and "consistency." *Id.* at 791 (citations omitted). "Supportability means the extent to which a medical source supports the medical opinion by explaining the relevant . . . objective medical evidence," and consistency "means the extent to which a medical opinion is consistent . . . with the

evidence from other medical sources and nonmedical sources in the claim." *Id.* at 791–92 (alterations in original) (quotation marks omitted). An ALJ "must articulate . . . how persuasive [he or she] finds all of the medical opinions from each doctor or other source and explain how [he or she] considered the supportability and consistency factors in reaching these findings." *Id.* at 792 (first alteration in original) (citation and quotation marks omitted).

Here, Claimant argues the ALJ erred in discounting Dr. Geary's medical opinion because the ALJ did not discuss how he considered the supportability factor. (Doc. 13 at 13.) She also asserts the ALJ erred in finding that Dr. Geary's opinion was not consistent with the record, arguing that normal cognitive findings elsewhere in the record are not inconsistent with Dr. Geary's assessed limitations and are ultimately irrelevant to the consistency determination. (*Id.* at 14–15.) Last, Claimant argues the ALJ erred in finding Dr. Geary's opinion inconsistent with her activities of daily living ("ADLs"). (*Id.* at 16–17.)

### 1.   Supportability

As mentioned, SSA concedes that the Court should remand for further administrative proceedings "so the ALJ can properly evaluate the persuasiveness of the prior administrative medical findings and medical opinions." (Doc. 16 at 5.) SSA notes the ALJ did not consider the supportability factor when assessing "prior administrative medical findings from State agency consultants J. Rubin, Psy.D., Nicole Lazorwitz, Psy.D., M. Bargan, M.D., and Erika Wavak, M.D., as well as an opinion from Robert Gordon, D.O." (*Id.*) But SSA argues that, with respect to Dr. Geary's opinion, the ALJ "appears to have evaluated the supportability of Dr. Geary's opinion, because the ALJ considered the 'relevant . . . objective medical evidence' that Dr. Geary 'presented.'" (*Id.* [quoting AR 52].) Because "remand is necessary to reevaluate the prior administrative medical findings and Dr. Gordon's opinion," however, SSA argues the "Court need not reach this issue." (*Id.* at 6.) In reply, Claimant argues the Court should apply the "credit-as-true" rule to Dr. Geary's opinion, as opposed to remand, but otherwise does not oppose remand.

1    (*See* Doc. 13 at 24 [requesting remand in the alternative].)

2          Because the parties agree that the ALJ failed to consider the supportability factor in

3    evaluating the prior administrative findings and medical opinions, the Court remands to

4    SSA.  Further, to the extent SSA argues the ALJ did not err in this regard with respect to

5    Dr. Geary, the Court disagrees.[2]  The ALJ only expressly considered whether Dr. Geary's

6    opinion was inconsistent with other evidence in the record, (AR 52 ["The opinion of Dr.

7    Geary is found unpersuasive as it lacks significant support from elsewhere in the record."]),

8    which does not bear on whether Dr. Geary sufficiently explained his opinion with reference

9    to "relevant . . . objective medical evidence."  *Woods*, 32 F.4th at 791–92.[3]

10                    **2.      Consistency**

11          Claimant also argues the ALJ erred in his findings that Dr. Geary's opinion was

12    inconsistent with the other record evidence and with Claimant's ADLs.  (Doc. 13 at 14–

13    18.)  SSA cursorily asserts that Claimant's "desire for a different interpretation of this

14    evidence is not probative of anything," but argues the Court "need not reach this issue"

15    because "remand is necessary" as discussed above.  (Doc. 16 at 6.)  The Court interprets

16    SSA's statement as agreement to remand the ALJ's consideration of the prior

17    administrative findings and medical opinions as a whole, as opposed to only remanding for

18    consideration of the supportability factor.  The Court thus will not address this issue on

19    appeal and will instead allow the ALJ to properly evaluate the prior administrative medical

20    findings and medical opinions—using the required regulatory factors under 20 C.F.R.

21    § 404.1520c(b)(2) and (c)(1)–(2)—and explain the decision in the first instance.

22

23    _____

[2]       SSA only states that remand is necessary for the ALJ to "reevaluate the prior
24    administrative medical findings and Dr. Gordon's opinion."  (Doc. 16 at 6.)  Claimant
      infers that SSA mistakenly referred to Dr. Gordon when it meant to refer to Dr. Geary.
25    (Doc. 17 at 4.)  Because the ALJ considered opinions from both Dr. Geary and Dr. Gordon,
      (AR 52, 54), however, the Court interprets SSA's brief as intentionally referring to Dr.
26    Gordon.
[3]       The Court infers that the ALJ meant that Dr. Geary's assessment was inconsistent
27    with other record evidence, not that Dr. Geary's opinion was unsupported.  *See Woods*, 32
      F.4th at 793 n.4 ("[T]he ALJ meant only that [the] opinion was inconsistent with other
28    record evidence.  Although the ALJ's meaning here is clear from context, to avoid
      confusion in future cases, ALJs should endeavor to use these two terms of art—'consistent'
      and 'supported'—with precision.").

### B.    Symptom Testimony

The ALJ found that Claimant's "statements concerning the intensity, persistence and limiting effects of [her] symptoms [were] not entirely consistent with the medical evidence and other evidence in the record." (AR 48.)  Claimant argues the ALJ did not provide legally sufficient grounds supported by substantial evidence to discount her symptom testimony. (Doc. 13 at 18–22.)  Specifically, she argues the ALJ erred in finding that the "balance of [her] mental status exam findings . . . were generally normal," (*id.* at 19 [quoting AR 50]), as her "reported symptoms to her medical providers . . . were consistent with [her] reports to the agency, and [her] medical providers observed that [she] had symptoms consistent with [her] symptom testimony," (*id.*).  She asserts that some "'normal' symptoms in this record that [fell] outside of the realm of depression, anxiety, bipolar disorder, and other affective issues does not serve as a specific, clear, and convincing reason to reject [her] symptom testimony." (*Id.*)  Claimant also argues the ALJ erred in finding she experienced some improvement in her symptoms, and that her ADLs were inconsistent with her claimed symptoms.  (*Id.* at 20–21.)  Upon the Court's review of the record, the Court concludes the ALJ's reasons for discounting Claimant's testimony were not specific, clear, or convincing and were not supported by substantial evidence in the record.

If the ALJ finds that a claimant "presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged," and that there is "no evidence of malingering," the ALJ may "reject [her] testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Revels v. Berryhill*, 874 F.3d 648, 655 (9th Cir. 2017) (citation omitted).  As the Ninth Circuit has stated, "[t]his is not an easy requirement to meet:  The clear and convincing standard is the most demanding required in Social Security cases." *Id.* (citation omitted).  "If the ALJ fails to provide specific, clear, and convincing reasons for discounting the claimant's subjective symptom testimony, then the ALJ's determination is not supported by substantial evidence." *Ferguson v. O'Malley*, 95 F.4th

1194, 1199 (9th Cir. 2024).  That said, an ALJ is "not required to believe every allegation of disabling pain."  *Smartt v. Kijakazi*, 53 F.4th 489, 499 (9th Cir. 2022) (quotation marks omitted).  And an ALJ is not required to "perform a line-by-line exegesis of the claimant's testimony" or "draft dissertations when denying benefits."  *Lambert*, 980 F.3d at 1277.

### 1.    Consistency with the Medical Evidence

As an initial matter, the Court agrees with Claimant that the ALJ did not sufficiently explain "which of [her] symptoms [the ALJ] found consistent or inconsistent with the evidence in [her] record and how [the ALJ's] evaluation of [her] symptoms led to [the ALJ's] conclusions."  (Doc. 13 at 18–19 [emphases and citation omitted].)  As the Ninth Circuit has held, an ALJ may not make "[g]eneral findings" and must "identify what testimony is not credible and what evidence undermines the claimant's complaints."  *Brown-Hunter v. Colvin*, 806 F.3d 487, 493 (9th Cir. 2015) (citation omitted).  An ALJ may not "simply state[] [his] non-credibility conclusion and then summarize[] the medical evidence supporting [his] RFC determination" or conclusorily state that a claimant's "functional limitations . . . were less serious than she has alleged."  *Id.* at 493–94.  The ALJ makes this error here by merely summarizing Claimant's hearing testimony, concluding that her testimony is not "entirely consistent" with the record, and then summarizing record evidence.  (AR 48–50.)  The Court thus cannot affirm the ALJ's findings.  *See Silvia S. v. Kijakazi*, 2023 WL 8167205, at *5 (S.D. Cal. 2023) ("[M]erely reciting the medical record without affirmatively contrasting it to a plaintiff's testimony does not constitute a clear and convincing reason.").

The ALJ also did not explain *how* certain normal findings in the record were inconsistent with Claimant's testimony.  The ALJ makes much of medical records showing Claimant, in some instances, "generally presented in euthymic mood and mental status exams were generally normal."  (AR 49.)  But a plain reading of Claimant's medical records as a whole show an extensive battle with bipolar disorder and related symptoms of anxiety and depression, even on occasions where Claimant presented with a euthymic mood.  The ALJ cited a January 11, 2021 mental status exam as showing normal results,

(AR 49), but ignores that in this same visit, Claimant complained of depression, in which she could not "get out of bed, [didn't] eat," and had anxiety such that she would get "sweats, a feeling of dread in the pit of [her] stomach," (AR 676).  These symptoms had endured since 2005 and affected her such that she had not "worked since Oct 2018" and was on "long term disability for 2 years."  (*Id.*)  She also had a "positive" result, in which she answered yes to every question, after taking a mood disorder questionnaire.  (AR 681–82.)

The ALJ also cited a January 27, 2021 visit, (AR 49), but ignored that Claimant received a PHQ-9 score of 21 during that visit, which is classified as severe depression, and that she reported that it was "[v]ery [d]ifficult" for Claimant to "do [her] work, take care of things at home, [and] get along with other people," (AR 694).  *See Dianna R. v. Kijakazi*, 2022 WL 4798124, at *4 n.5 (S.D. Cal. 2022) (explaining the function and score classifications for the PHQ-9).  She received a GAD-7 score of 13 at this visit, which Claimant's provider classified as severe anxiety.  (AR 699.)

The ALJ disregarded an "extremely depressed" presentation at a February 3, 2021 appointment on grounds that Claimant's "friend had died of Covid-19 and also heard several other friends that had recently died from Covid-19," (AR 49), but the ALJ failed to explain how emotions associated with grief are inconsistent with Claimant's testimony, especially considering such grief could exacerbate Claimant's bipolar disorder symptoms. (*Cf.* AR 76 [testifying that "things that shouldn't get me agitated as they do, they do"]; AR 440.)

The ALJ noted that Claimant presented with euthymic mood and engagement at a February 10, 2021 appointment, (AR 49), but ignored that Claimant's therapist noted in that same visit the "incongruence in her mood and situation" because Claimant "expressed feeling *numb* in response to loss/changes," (AR 706 (emphasis added)).  She also had a PHQ-9 score of 22 (severe depression) and a GAD-7 score of 14 (severe anxiety) at that visit.  (AR 708–09.)

The ALJ made similar errors concerning the majority of the other cited records by ignoring other record discussions or findings that showed lingering and intense symptoms

despite Claimant presenting as "euthymic," or discounting some instances of severe

symptoms because they could be attributable to a distressing life event as opposed to

appearing in a vacuum.  (AR 49–50.)[4]  Likewise, the ALJ's assertion that Claimant's

difficulties with family members constitute a reason to discount her symptoms ignores that

---

[4]    (AR 710–13 [February 24, 2021 visit: "Pt stated she revealed she now realized she is numbing as a way of coping . . . ." PHQ-9 score of 14 (moderate depression), GAD-7 score of 14 (severe anxiety).]; AR 716–17 [March 18, 2021 visit: PHQ-9 score of 18 (moderately severe depression), GAD-7 score of 12 (severe anxiety).]; AR 718–21 [March 22, 2021 visit: "She endorsed increased symptoms of depression. . . . She endorsed passive suicidal ideations . . . ." PHQ-9 score of 22 (severe depression), GAD-7 score of 10 (moderate anxiety).]; AR 722–25 [March 29, 2021 visit: PHQ-9 score of 18 (moderately severe depression), GAD-7 score of 13 (severe anxiety).]; AR 726–29 [April 5, 2021 visit: "Pt impressed as dysphoric . . . ." PHQ-9 score of 18 (moderately severe depression), GAD-7 score of 9 (moderate anxiety).]; AR 730–33 [April 16, 2021 visit: "Pt stated she has had some good days and some not so good days with regard to her mood and anxiety." GAD-7 score of 10 (moderate anxiety).]; AR 734–37 [April 23, 2021 visit:  "Pt and therapist discussed the lack of predictability of Bipolar symptoms. Pt shared the urge and desire to engage with others when invited but often cancelling due to changes in mood and inability to function."  PHQ-9 score of 16 (moderately severe depression), GAD-7 score of 10 (moderate anxiety).]; AR 738–41 [April 30, 2021 visit:  "Pt stated she felt some hypomanic symptoms of last week and then crashed mid-week."  PHQ-9 score of 22 (severe depression), GAD-7 score of 17 (severe anxiety).]; AR 742–45 [May 7, 2021 visit: PHQ-9 score of 14 (moderate depression), GAD-7 score of 6 (moderate anxiety).]; AR 745–48 [May 14, 2021 visit:  "The session focused on her most recent hypomanic episode and ways of managing her symptoms."  PHQ-9 score of 8 (mild depression), GAD-7 score of 13 (severe anxiety).]; AR 750–53 [May 21, 2021 visit: "Pt stated her mood was good or just numb this past week." PHQ-9 score of 15 (moderately severe depression), GAD-7 score of 8 (moderate anxiety).]; AR 755–58 [June 4, 2021 visit:  "Pt stated she has been anxious and sad." PHQ-9 score of 13 (moderate depression), GAD-7 score of 7 (moderate anxiety).]; AR 759–62 [June 18, 2021 visit: PHQ-9 score of 21 (severe depression), GAD-7 score of 13 (severe anxiety).].)
    This continues on, although the ALJ simply represented that the next two years of visits show "euthymic" moods, while ignoring notes in the same reports that make plain Claimant's continuing battles with her symptoms. (AR 49. *But see, e.g.*, AR 772–75 [July 23, 2021:  "Therapist helped Pt see that often times mood symptoms are cyclical . . . ." PHQ-9 score of 13 (moderate depression), GAD-7 score of 11 (severe anxiety).]; AR 780 [August 13, 2021 visit: "Pt endorsed increased anxiety and depression in the past week."]; AR 794 [September 7, 2021 visit:  "Pt endorse weekly the challenges she experience[s] functioning."]; AR 985, 993 [November 3, 2021 visit:  "[S]he does not feel she is able to work at this time due to her physical and mental health. . . .  [R]ates depression at 7/10 and anxiety at 7/10 on scale of 0-10 with 10 being the highest. . . .  Pt reported depression."]; AR 1006 [November 18, 2021 visit:  "Pt impressed as mildly dysphoric . . . ."]; AR 1391 [October 25, 2022 visit:  "The session focused on Pt's difficulty functioning with new medication. . . .  Pt require[s] continued therapeutic support due to Bipolar Disorder, PTSD and anxiety that is debilitating and causes daily issues functioning."]; AR 1394 [November 8, 2022:  "Pt require[s] continued therapeutic support due to Bipolar Disorder, PTSD and anxiety that is debilitating and causes daily issues functioning."]; AR 1397 [same and noting struggles with showering]; AR 1400 [same and noting anxiety and "fearful anticipation"]; AR 1402 [same and stating "Pt stated she has had a low mood and increased anxiety for the past week"]; AR 1404 [same and stating that "Pt endorsed passive suicidal ideations" and "credited the therapeutic coping skills with keeping her out of the hospital as she felt terrible"].)

the record actually shows that many of these difficulties were at very least related to, if not caused by, her impairments. (*See* AR 375, 401, 440, 1013.) As a whole, the record shows that Claimant's symptoms consistently remained, regardless of what specific event could be the source of her symptoms at any given time. *Cf. Attmore v. Colvin*, 827 F.3d 872, 878–79 (9th Cir. 2016) (holding that isolated incidents followed by "flareup[s] of [a claimant's] symptoms" were not "examples of a broader development"); *Garrison v. Colvin*, 759 F.3d 995, 1017 (9th Cir. 2014) ("[I]mproved functioning while being treated and while limiting environmental stressors does not always mean that a claimant can function effectively in a workplace.").

Further, the ALJ did not explain how certain characteristics the ALJ considered "normal" are inconsistent with Claimant's diagnoses at all. For example, it is unclear to the Court how an "intact fund of knowledge," a cooperative attitude with a therapist, speech at a normal volume, or being aware of current events, (AR 49), are inconsistent with feelings of severe anxiety and depression. *Ghanim v. Colvin*, 763 F.3d 1154, 1164 (9th Cir. 2014) ("[O]bservations of cognitive functioning during therapy sessions do not contradict [claimant's] reported symptoms of depression and social anxiety.").

Even setting this aside, the ALJ did not consider that Claimant's symptoms were episodic in nature, meaning that it would not necessarily be inconsistent for Claimant to present as euthymic one day but not others. (AR 776 ["Pt stated she feels good today but that most of the week she felt terrible."].) *See, e.g.*, *Smith v. Colvin*, 2015 WL 1814433, at *3 (N.D. Cal. 2015) (holding ALJ erred in discounting claimant's testimony in part because the ALJ gave "short shrift to the fact that [her] mental impairment is cyclical or episodic in nature and[, as a result, she] has good days and bad days" (second alteration in original) (quotation marks omitted)); *Witt v. Colvin*, 2014 WL 6750329, at *8 (D. Or. 2014) ("Bipolar disorder is episodic in nature and Plaintiff has good days and bad days. The ALJ erred in not considering this fact . . . .").

### 2.    Improvement

Similarly, the ALJ did not explain how slight improvement with medication was

inconsistent with Claimant's testimony. (Doc. 13 at 20–21.) "As [the Ninth Circuit has] emphasized while discussing mental health issues, it is error to reject a claimant's testimony merely because symptoms wax and wane in the course of treatment." *Garrison*, 759 F.3d at 1017. This is because "[c]ycles of improvement and debilitating symptoms are a common occurrence." *Id.* This is indeed the "nature of bipolar disorder." *Attmore*, 827 F.3d at 878. "Reports of 'improvement' in the context of mental health issues" thus must "be interpreted with an understanding of the patient's overall well-being and the nature of her symptoms." *Garrison*, 759 F.3d at 1017.

The ALJ points to appointments in which Claimant reported that her medications were in a good place, but the record shows many failed medications and, as discussed above, continued struggles with bipolar disorder and related symptoms while Claimant was using, at times, several medications at once. (*See, e.g.*, AR 948 [showing lists of failed medications and notes that Claimant was "currently on seven medications at this time," two of which related to physical symptoms]; Doc. 17 at 9.) The ALJ also did not explain how Claimant's medication history resulted in improvement of her symptoms at large, as opposed to temporary improvement.

The Court thus concludes the ALJ erred by "improperly singl[ing] out a few periods of temporary well-being from a sustained period of impairment and relied on those instances to discredit" Claimant—these data points did not "*in fact* constitute examples of a broader development" sufficient to meet the "clear and convincing" standard. *Garrison*, 759 F.3d at 1018; *see also Attmore*, 827 F.3d at 878 ("Although the ALJ pointed to isolated signs of improvement, the ALJ could not find medical improvement on that basis unless the ups and the downs of Attmore's development showed *sustained* improvement."); *Golden v. Colvin*, 2017 WL 4642008, at *8 (N.D. Cal. 2017) ("The fact Plaintiff did not act depressed and was not in an active manic state during certain appointments . . . does not constitute substantial evidence that her bipolar disorder is sufficiently improved . . . .").

### 3.    ADLs

The ALJ found that Claimant's ADLs did not "suggest limitations beyond those

- 11 -

found in this decision," and then summarized Claimant's function report and information from some of Claimant's medical records. (AR 50–51.) The ALJ did not explain, however, *how* Claimant's ADLs were inconsistent with her testimony, as opposed to merely summarizing the record. (*Id.*) As the Ninth Circuit has stated, "disability claimants should not be penalized for attempting to lead normal lives in the face of their limitations," so ADLs only bear on a claimant's testimony if the "level of activity [was] inconsistent with [a claimant's] claimed limitations." *Garrison*, 759 F.3d at 1016 (alteration in original) (citation omitted). The Court thus cannot affirm the ALJ's conclusions. *Brown-Hunter*, 806 F.3d at 493 (ALJ's conclusion of non-credibility followed by summary of medical evidence was "not the sort of explanation or the kind of 'specific reasons' [courts] must have in order to review the ALJ's decision meaningfully"); *id.* at 494 ("[P]roviding a summary of medical evidence in support of a residual functional capacity finding is not the same as providing clear and convincing *reasons* for finding the claimant's symptom testimony not credible.").

*    *    *

The Court thus holds that the ALJ did not provide specific reasons for discounting Claimant's symptom testimony supported by substantial evidence, which was not harmless error. *Id.* at 494.

### C.    Remand

As stated, SSA concedes error in the ALJ's evaluation of prior administrative medical findings and medical opinion evidence from State agency consultants J. Rubin, Psy.D., Nicole Lazorwitz, Psy.D., M. Bargan, M.D., and Erika Wavak, M.D., as well as an opinion from Robert Gordon, D.O. The Court agrees to remand for the ALJ to properly assess these findings and opinions—as well as Dr. Geary's opinion—under the required factors and reverses on this basis. Additionally, the Court reverses the ALJ's findings concerning Claimant's symptom testimony.

Ordinarily, if the Court reverses an ALJ, the Court remands to SSA for further proceedings. *Garrison*, 759 F.3d at 1019. Claimant requests that the Court apply the

"credit-as-true rule," however, (Doc. 13 at 22–24; Doc. 17 at 3–7), which would result in the immediate award of benefits, as opposed to remand for further proceedings. *Garrison*, 759 F.3d at 1019.

The credit-as-true rule only applies if (1) the ALJ "failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion"; (2) the "record has been fully developed," such that there are no "outstanding issues that must be resolved before a determination of disability can be made" and "further proceedings would not be useful"; and (3) "if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand." *Washington v. Kijakazi*, 72 F.4th 1029, 1041 (9th Cir. 2023) (citations omitted); *Trevizo*, 871 F.3d at 683 (citation omitted). The Ninth Circuit has described this result as appropriate "only in rare circumstances." *Brown-Hunter*, 806 F.3d at 495 (quotation marks omitted). "The decision whether to remand a case for additional evidence, or simply to award benefits[,] is within the discretion of the court." *Revels*, 874 F.3d at 668 (alteration in original) (citation omitted).

The Court determines in its discretion to remand for further proceedings and not apply the credit-as-true rule. Here, the ALJ's errors largely lie in his failure to properly evaluate and explain his reasoning. Thus, there are outstanding issues that must be resolved. The ALJ might, after properly evaluating the record and explaining his reasoning, decide again on remand that Claimant is not disabled. Accordingly, the Court cannot find that further proceedings would "serve no useful purpose." *See Brown-Hunter*, 806 F.3d at 495 (citation omitted); *id.* (rejecting the claimant's request for awarding benefits based on SSA's legal error).

Claimant's cited precedent, (Doc. 13 at 22–23), does not compel a different conclusion. In *Lingenfelter v. Astrue*, the court applied the credit-as-true rule because the ALJ did not provide clear and convincing reasons for an adverse credibility determination and because there was "*no consensus of medical opinion contrary* to [the claimant's] testimony." 504 F.3d 1028, 1041 (9th Cir. 2007) (emphasis added). In other words, if the

claimant's testimony were credited as true, there were no medical opinions contradicting that testimony, and the VE testified that the claimant was disabled when his testimony was credited as true. *Id.* Accordingly, no further administrative proceedings were necessary to establish that the claimant was disabled and entitled to benefits. *Id.*

In *Benecke v. Barnhart*, the court applied the credit-as-true rule where remand would only have served the purpose of having the VE address the "precise work limitations established by the improperly discredited testimony." 379 F.3d 587, 595 (9th Cir. 2004). This was an "unusual case in which it [was] clear from the record that the claimant [was] unable to perform gainful employment in the national economy, even though the [VE] did not address the precise work limitations established by the improperly discredited testimony." *Id.* Claimant has not argued that this is such an "unusual case," and the circumstances in *Benecke* are not similarly present here.

Accordingly,

**IT IS ORDERED** that the decision of the ALJ is **vacated and remanded** for further administrative proceedings.

**IT IS FURTHER ORDERED** directing the Clerk to enter final judgment consistent with this Order and close this case.

Dated this 20th day of March, 2025.

_____
Honorable Sharad H. Desai
United States District Judge